UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| CRYSTAL GONZALEZ, as the Administrator of the ESTATE OF ETHAN LEE GONZALEZ,[1]<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF BETTENDORF and WHKS & CO., INC.,<br><br>    Defendants.<br><br>CITY OF BETTENDORF,<br><br>    Cross-Plaintiff,<br><br>v.<br><br>WHKS & CO., INC.,<br><br>    Cross-Defendant. | Case No. 4:23-cv-04078-SLD-JEH |

ORDER

Before the Court are Defendant/Cross-Defendant WHKS & Co., Inc.'s ("WHKS") Motion to Dismiss the Amended Complaint, ECF No. 10; Motion to Dismiss City of Bettendorf's Counterclaim, ECF No. 17; and Motion for Leave to File Reply in Support of

---

[1] Although the amended complaint's caption includes heirs or next of kin Crystal Gonzalez, Lillianna Gonzalez, and Carlos Gonzalez, Jr., Am. Compl. 1, ECF No. 9, the Court omits them because they are not proper plaintiffs in this suit. The amended complaint alleges claims pursuant to Illinois's Wrongful Death Act, 740 ILCS 180/1–2.2. *See, e.g.*, Am. Compl. 1. A suit under the Wrongful Death Act must "be brought by and in the names of the personal representatives of [a] deceased person." 740 ILCS 180/2(a). The proceeds of a suit under the Wrongful Death Act are "for the exclusive benefit of the surviving spouse and next of kin of such deceased person," *id.*, but the next of kin are not properly plaintiffs in the suit. *See Herndon v. Kaminski*, 205 N.E.3d 802, 808 (Ill. App. Ct. 2022) ("A wrongful death claim must be filed by a representative of the decedent on behalf of the decedent's estate. Thus, for purposes of a wrongful-death suit, the next of kin suing in his or her individual capacity is not a proper plaintiff." (citations omitted)). The Clerk is directed to remove Lillianna and Carlos Gonzalez, Jr. from the docket as plaintiffs.

1

Motion to Dismiss the Complaint, ECF No. 28. For the reasons that follow, the motion for leave to reply is GRANTED, and the motions to dismiss are DENIED. However, the Court ORDERS Plaintiff Crystal Gonzalez to file an amended complaint properly alleging citizenship of the parties by January 22, 2024.

## BACKGROUND[2]

On May 22, 2022, Ethan Lee Gonzalez was walking on the pedestrian walkway along the Interstate 74 ("I-74") bridge between Moline, Illinois and Bettendorf, Iowa with two friends. A motor vehicle entered onto the pedestrian walkway from Bettendorf and struck them. The collision caused Ethan's[3] death. Plaintiff was appointed Administrator of Ethan's estate.

Prior to May 22, 2022, Defendant City of Bettendorf ("the City") and WHKS "participated in and/or controlled the planning, design, construction, inspection, approvals, opening, and maintenance of the aforesaid pedestrian walkway." Am. Compl. ¶¶ 25, 34, ECF No. 9. "[N]umerous national standards, criteria, and design theories for pedestrian walkways required the design and installation of bollards or other obstructions preventing vehicles from [accessing] the entrance to the pedestrian walkway." *Id.* ¶ 31. Yet—despite the walkway being wide enough for a motor vehicle to drive on—there were no bollards, barriers, or other traffic control systems installed to prevent motor vehicles from entering the walkway or to warn motor vehicle operators that the walkway was for pedestrian use only.

Plaintiff filed suit against the City and WHKS in May 2023. *See generally* Compl., ECF No. 1. The amended complaint was filed in June 2023 and asserts four claims pursuant to Illinois's Wrongful Death Act, 740 ILCS 180/1–2.2: first, that the City was negligent and

---

[2] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant's] favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Thus, the factual background is drawn from the Amended Complaint.
[3] Because Ethan and Plaintiff share the same last name, the Court refers to Ethan by his first name.

breached its duty to Ethan, causing his death, Am. Compl. ¶¶ 35–44; second, that the City acted in a willful and wanton or grossly negligent manner, causing Ethan's death, *id.* ¶¶ 45–55; third, that WHKS was negligent and breached its duty to Ethan, causing his death, *id.* ¶¶ 56–65; and fourth, that WHKS acted in a willful and wanton or grossly negligent manner, causing Ethan's death, *id.* ¶¶ 66–77. The City filed a contribution claim against WHKS, claiming that if it is found liable to Plaintiff, it "should be entitled to contribution from [WHKS] in an amount commensurate with its relative degree of culpability in causing the injuries or damages complained of by Plaintiff." Answer, Affirmative Defenses & Countercl. 18–19, ECF No. 1. Though styled as a counterclaim, *id.* at 18, this is a crossclaim as it is a claim by one defendant against another defendant. *See* Fed. R. Civ. P. 13(g).

WHKS moves to dismiss Plaintiff's claims against it and the City's crossclaim, arguing that it is not subject to personal jurisdiction in Illinois. Mot. Dismiss Am. Compl. 1; Mot. Dismiss Countercl. 1. Plaintiff and the City contend the Court does have personal jurisdiction over WHKS. *See generally* Mem. Supp. Pl.'s Resistance, ECF No. 20-1; City's Resp., ECF No. 23. WHKS moves for leave to file a reply in support of its motion to dismiss Plaintiff's amended complaint, Mot. Leave Reply 1, which Plaintiff opposes, Pl.'s Refiled Resistance, ECF No. 30.

## DISCUSSION

### I.   Motion for Leave to File a Reply

For all motions other than summary judgment, "[n]o reply to the response is permitted without leave of Court." Civil LR 7.1(B)(3). "Typically, reply briefs are permitted if the party opposing a motion has introduced new and unexpected issues in his response to the motion, and the Court finds that a reply from the moving party would be helpful to its disposition of the motion." *Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011).

3

A court may also permit a reply "in the interest of completeness." *Zhan v. Hogan*, Case No. 4:18-cv-04126-SLD-JEH, 2018 WL 9877970, at *2 (C.D. Ill. Dec. 18, 2018) (quotation marks omitted).

WHKS argues the Court should grant it leave to reply so that it may address Plaintiff's argument that the Court has general jurisdiction over it and to respond to exhibits submitted by Plaintiff in support of her contention that the Court has personal jurisdiction over WHKS. *See* Mem. Supp. Mot. Leave Reply 1–2, ECF No. 29. Plaintiff opposes WHKS's request for leave to file a reply because WHKS "would have had prior knowledge of all of Plaintiff's exhibits" and because Defendant asserts no new controlling case law. Pl.'s Refiled Resistance ¶¶ 1–3.

As will be discussed further below, the Court finds Plaintiff's general jurisdiction argument underdeveloped and waived, so it does not need any argument from WHKS on that issue. However, the Court will allow the reply so that WHKS has an opportunity to address the exhibits Plaintiff attached to her response. None of the exhibits were cited or mentioned in the amended complaint, so even if the exhibits were generally accessible to or known to WHKS prior to filing its motion to dismiss, WHKS would not have been aware that Plaintiff's theory of personal jurisdiction relied on those exhibits until she filed her response. Accordingly, the Court GRANTS the motion for leave to reply. The Clerk is directed to file the reply, ECF No. 29-1, on the docket.

## II. Personal Jurisdiction

### a. Legal Standard

A defendant may move to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. While "[a] complaint need not include facts alleging personal jurisdiction," once a motion to dismiss has been filed, "the plaintiff bears the burden of

demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (quotation marks omitted). When the district court rules on such a motion "based on the submission of written materials, without the benefit of an evidentiary hearing, . . . the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Id.* (quotation marks omitted). "[T]he party asserting jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983).

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). Illinois law provides that courts may exercise personal jurisdiction up to the limits of the federal Constitution. *See* 735 ILCS 5/2-209(c) ("A court may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States."); *see Kipp*, 783 F.3d at 697 (citing to this provision to support that "[t]he governing statute in Illinois permits its courts to exercise personal jurisdiction up to the limits of the Due Process Clause of the Fourteenth Amendment"); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (indicating that "while . . . these two standards hypothetically might diverge in some cases," in practice, "there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction"). The Due Process Clause of the federal Constitution "authorizes personal jurisdiction over out-of-state defendants when the defendant has 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kipp*, 783 F.3d at 697 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two types of personal jurisdiction—general and specific. *Id*. "General jurisdiction is all-purpose; it exists only when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Id*. at 697–98 (alteration in original) (quotation marks omitted). Specific jurisdiction, meanwhile, is "case-specific; the claim must be linked to the activities or contacts with the forum." *Id*. at 698. "[T]he relationship must arise out of contacts that the defendant himself creates with the forum State," and the "minimum contacts analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 284–85 (2014) (emphasis omitted) (quotation marks omitted). "In analyzing whether the defendant's contacts are sufficient to establish specific jurisdiction, [courts] do not employ a mechanical or quantitative test." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) (quotation marks omitted). Courts find that specific personal jurisdiction exists "if the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quotation marks omitted).

      b. **Analysis**

While Plaintiff argues that the requirements for general personal jurisdiction are met in this case, *see* Mem. Suppl. Pl.'s Resistance 3–5, and identifies some facts that are purportedly relevant to general jurisdiction, *id.* at 2, she develops her argument no further. Instead, she states that because the requirements for general jurisdiction are "considerably more stringent," her memorandum will "largely" focus on specific jurisdiction. *Id.* at 4. Such an underdeveloped argument is waived. *Cf. Shipley v. Chi. Bd. of Election Comm'rs*, 947 F.3d 1056, 1063 (7th Cir.

2020) ("Arguments that are underdeveloped, cursory, and lack supporting authority are waived."); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("It is not [a] court's responsibility to research and construct the parties' arguments.").

Thus, the question before the Court is whether it can exercise specific jurisdiction over WHKS with respect to this case. WHKS argues that it cannot because "[t]he Amended Complaint's allegations show that [Plaintiff's] claims arise from and relate to [WHKS's] contacts with Iowa—not Illinois," and the only connection to Illinois alleged in the amended complaint is the unrelated driver's negligence in hitting Ethan and his friends in Illinois. *See* Mem. Supp. Mot. Dismiss Am. Compl. 3, 5–6, ECF No. 10-1. WHKS further argues that because the City's "contribution claim . . . depends on [Plaintiff's] jurisdictional allegations," the Court lacks specific jurisdiction over it with respect to the City's claim as well. *See* Mem. Supp. Mot. Dismiss Countercl. 1, ECF No. 17-1.

Plaintiff contends that WHKS is subject to the Court's jurisdiction because it participated in building a bridge and walkway allowing travel between Iowa and Illinois, because its activities with respect to the bridge and walkway were directed and overseen by the State of Illinois, because its activities "were intertwined" with Illinois and its citizens, and because its "work was being performed for the benefit of Illinois." Mem. Supp. Pl.'s Resistance 10–14. The City contends that WHKS is subject to the Court's jurisdiction because it "constructed an interstate bridge between Iowa and Illinois meant to attract Illinois residents and . . . regularly met and conferred with State of Illinois officials in performance of its bridge activities," and thus it "purposefully avail[ed] itself to and invok[ed] the benefits of Illinois." City's Resp. 1–2.[4]

---

[4] No party cites to any cases with analogous facts; instead, the parties primarily rely on general principles of personal jurisdiction. *See, e.g.*, Mem. Supp. Mot. Dismiss Am. Compl. 2–5; Mem. Supp. Pl.'s Resistance 6–10, 13–14; City's Resp. 2–4, 6–7. Such principles are sufficient to resolve the instant motions.

For three primary reasons, the Court finds that Plaintiff—and, accordingly, the City—has met her burden to demonstrate that the Court can exercise specific personal jurisdiction over WHKS. First, and most importantly, the crux of Plaintiff's claim is that WHKS was negligent or acted willfully and wantonly in the design and construction of the entrance to a pedestrian walkway between Iowa and Illinois. *See* Am. Compl. ¶¶ 17, 34, 56–61, 66–73. The pedestrian walkway was part of a larger project of building a new I-74 bridge between Moline, Illinois and Bettendorf, Iowa. *See* WHKS's Agreement with Alfred Benesch & Co. 3,[5] Mem. Supp. Pl.'s Resistance Ex. 4, ECF No. 20-5. WHKS's contract with prime consultant Alfred Benesch & Company describes the project's parameters as "reconstruction of a 7.8 mile corridor of I-74 in Scott County, Iowa and Rock Island County, Illinois," including replacement of the existing I-74 bridge over the Mississippi River and improvement of pedestrian connections. *Id.* The I-74 bridge reconstruction was conducted pursuant to an agreement between Iowa and Illinois. *See generally* Iowa/Illinois Border River Bridge Agreement, Mem. Supp. Pl.'s Resistance Ex. 2, ECF No. 20-3. While the contract with Alfred Benesch & Company shows that WHKS's particular role was to design and construct in Iowa, *see, e.g.*, WHKS's Agreement with Alfred Benesch & Co. 3 (noting that WHKS's tasks were for the "Iowa Side"), the contract demonstrates that WHKS knew it was participating in a larger, interstate project. WHKS cannot plausibly contend it did not understand that it was designing and building part of a bridge and pedestrian walkway that would necessarily connect with Illinois. *Cf.* Mem. Supp. Pl.'s Resistance 3 ("The activities of WHKS, in the construction and planning, were for no other purpose, on the Iowa side, but to facilitate access to the State of Illinois, by Illinois residents and other travelers. There is no other exit on the bridge, other than over the rail into the Mississippi River.").

---

[5] The Court uses the page numbers generated by CM/ECF because the Agreement is not paginated.

Relatedly, WHKS agreed to participate in this interstate construction project and derived a benefit from its participation—it was compensated for its work. *See* WHKS's Agreement with Alfred Benesch & Co. 7 (indicating that WHKS would receive its costs plus a fixed fee for its work under the agreement). It would "be unfair to allow [WHKS] to escape having to account in other States for consequences that ar[o]se proximately from" its activities in constructing part of an interstate bridge. *Burger King*, 471 U.S. at 474. "[T]he Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id.*

Lastly, for over six years, WHKS attended meetings about the project run by the Illinois Department of Transportation and the Iowa Department of Transportation. *See generally* Project Management Team Meeting Attendance Rosters, Mem. Supp. Pl.'s Resistance Ex. 5, ECF No. 20-6 (spanning 2010 to 2016); *see also* WHKS's Agreement with Alfred Benesch & Co. 3 (indicating that the project included "managing/coordinating activities with other Consultants along with the Iowa and Illinois Departments of Transportation for the entire corridor from the final design through construction"). While WHKS argues these meetings do not support jurisdiction because the meetings occurred at the Iowa Department of Transportation, *see* Reply 5, the Court disagrees. The attendance rosters indicate that the location of the meeting was a conference room in Iowa and video conference from multiple locations. *See, e.g.*, Apr. 13, 2011 Attendance Roster, ECF No. 20-6 at 1–2. The rosters do not indicate who attended in person versus via video conference, *e.g.*, *id.*, but, regardless, the importance of these meetings is that they were conducted, at least in part, by the Illinois Department of Transportation. The rosters show that WHKS attended many meetings with an Illinois state agency and Illinois government officials about the project. Even if conducted by video, such meetings are akin to telephone calls

9

and constitute contacts with Illinois. *Cf. Felland v. Clifton*, 682 F.3d 665, 676 & n.3 (7th Cir. 2012) (counting letters, phone calls, and emails as part of the defendant's contacts with the forum state).

The Court concludes that it does not offend notions of fair play and substantial justice to exercise personal jurisdiction over WHKS. WHKS participated in designing and constructing an interstate bridge spanning Iowa and Illinois. It coordinated and met with Illinois government officials regarding the project. The bridge and walkway are, literally, connected to Illinois and direct people and traffic to Illinois. It should have been obvious to WHKS that its actions, even if physically limited to the Iowa portions of the bridge and walkway, could have caused injury in Illinois such that WHKS should have "reasonably anticipate[d] being haled into court" in Illinois for such injuries. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

### III.     Subject Matter Jurisdiction

Nevertheless, the Court has identified a defect in Plaintiff's allegations supporting subject matter jurisdiction, which it must raise. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) ("[C]ourts must consider [challenges to subject matter jurisdiction] *sua sponte*."). Plaintiff alleges that the Court has diversity and supplemental jurisdiction over this case. Am. Compl. ¶ 16 (citing 28 U.S.C. §§ 1332(a)(1), 1367(a)). The party seeking to invoke diversity jurisdiction bears the burden of establishing it. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009). That party must identify the citizenship of each party to the litigation. *See Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533–34 (7th Cir. 2007). For natural persons, citizenship "depends on domicile—that is to say, the state in which a person intends to live over the long run." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012).

When a party acts as "the legal representative of the estate of a decedent," it is "deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2).

Plaintiff sues as representative of Ethan's estate. However, she alleges only Ethan's residence. Am. Compl. ¶¶ 6, 16. Allegations of residency do not suffice to establish citizenship. *Heinen*, 671 F.3d at 670. Rather than dismiss the case, the Court will allow Plaintiff to amend her defective allegations. *See Leaf v. Sup. Ct. of Wis.*, 979 F.2d 589, 595 (7th Cir. 1992) ("[L]eave to amend defective allegations of subject matter jurisdiction should be freely given." (quotation marks omitted)). Accordingly, Plaintiff is ordered to file an amended complaint that properly alleges her citizenship by January 22, 2024.

## CONCLUSION

Accordingly, Defendant/Cross-Defendant WHKS & Co., Inc.'s Motion to Dismiss the Amended Complaint, ECF No. 10, and Motion to Dismiss City of Bettendorf's Counterclaim, ECF No. 17, are DENIED. The Motion for Leave to File Reply in Support of Motion to Dismiss the Complaint, ECF No. 28, is GRANTED. The Clerk is directed to file the reply, ECF No. 29-1, on the docket. The Clerk is also directed to terminate Lillianna Gonzalez and Carlos Gonzalez, Jr. as plaintiffs on the docket. Plaintiff Crystal Gonzalez is ORDERED to file an amended complaint that sufficiently alleges her citizenship by January 22, 2024.

Entered this 8th day of January, 2024.

                                                       s/ Sara Darrow
                                                  SARA DARROW
                                   CHIEF UNITED STATES DISTRICT JUDGE